Eileen I. GORE and Jack H. Gore,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 23693.

United States District Court
E. D. Michigan, S. D.

May 22, 1964.

Robert J. McIntosh, Ernest F. Oppliger, Schlee, McIntosh, Simpson, Oppliger & Mugan, Port Huron, Mich., for plaintiffs.

Lawrence Gubow, U. S. Atty., Barton W. Morris, Asst. U. S. Atty., Detroit, Mich., for defendant.

LEVIN, Chief Judge.

This action is brought under the Federal Tort Claims Act, Title 28 U.S.C. §§ 1346 and 2671 et seq., by Eileen I. Gore for personal injuries and by her husband, Jack H. Gore, for loss of her services and consortium.

The plaintiff Jack H. Gore is an airman in the United States Air Force, stationed at Selfridge Field Air Force Base, Michigan. Mrs. Gore resides with him at the Base. On October 25, 1961, she was admitted to the hospital at the Base for gynecological surgery. On the following day she was operated on in that hospital by a gynecological surgeon in the military service. There was a complete recovery from the surgical operation, but Mrs. Gore suffers from a functional impairment to her left arm brought about by the circumstances hereinafter related.

The plaintiffs' claim of negligence is based upon the alleged lack of qualifications and due care on the part of the physicians, surgeons, and the nurse-anesthetist, and the fact that the surgeon was not at the operating table when an anesthetic, sodium pentothol, was administered by the nurse-anesthetist.

The anesthetic was injected first into the left arm. Immediately after the injection, the nurse-anesthetist was told that the arm was smarting and noticed some swelling. She promptly aspirated the plunger and injected the sodium pentothol in the right arm, and the patient was anesthetized. The needle penetrated the vein in the left arm, but there was seepage into the muscle causing swelling, which gradually disappeared. There was no discoloration or any other indication of improper effects of the injection of the sodium pentothol in the left arm.

The operation was completed without complication. Before her discharge from the hospital, Mrs. Gore was examined by a staff doctor. There appeared no difficulty with the left arm, and she made no complaint.

On December 13, 1961, Mrs. Gore returned to the hospital after the gynecological surgeon was advised that she was suffering from a mild discomfort at the area of the sodium pentothol injection in the left arm and that she was having pain on movement at her elbow and wrist. The gynecological surgeon examined her and immediately referred her to another surgeon specially trained in orthopedic surgery who was also identified with the Base hospital. The treatment prescribed did not alleviate the difficulty, and on December 19, 1961, she was again hospitalized for examination. A civilian doctor specially trained in treating infirmities of the hand then examined her at the request of military surgeons. She still did not respond to medical treatment and on January 18, 1962, was readmitted to the hospital, and surgery was performed by the orthopedic surgeon. Her difficulty has been established as having arisen from the fact that the muscle tissue in the left arm was damaged and replaced by scar tissue.

The court finds that the surgeons are eminently qualified by training and experience in their respective specialties and that the nurse-anesthetist has excellent training and the rank of major and has been a nurse for twenty years, twelve of which as a nurse-anesthetist certified by the American Association of Nurse-Anesthetists.

There is no credible testimony produced on the part of the plaintiffs that there was a lack of due care or skill on the part of the anesthetist or the physicians or surgeons in the administering of the anesthetic or subsequent care of Mrs. Gore.

One of the expert witnesses who gave testimony is Dr. Paul R. Dumke, the Chief of Anesthesiology in one of Detroit's largest and most prominent hospitals. He was formerly a Professor of Anesthesiology in one of the country's leading medical schools. He is a member of the American Board of Anesthesiology and the American College of Anesthesiology and serves on both Boards as one of their examining members. He has written and published many articles in his specialty.

He testified that the course pursued in administering the sodium pentothol and subsequent treatment by the nurse-anesthetist and the operating physician was in accordance with the recognized practice of skillful and careful nurse-anesthetists engaged in the specialty of anesthesiology. It is not unusual for a needle to penetrate the muscle even after it has been properly inserted in the vein, and this may occur without any lack of care or skill on the part of the person inserting the needle. Because a needle is a very sharp instrument, any movement by the patient or an accidental jarring of the operating table could cause a penetration. Mrs. Gore was given intravenous feeding as a pre-operative measure, and it is not contradicted that the pressure from the intravenous feeding itself could have caused the needle to so penetrate.

The plaintiffs' contention that the surgeon was negligent in permitting the anesthetist to anesthetize Mrs. Gore while he was not in the operating room is without merit. The testimony showed that he was in an adjoining room scrubbing his hands for the operation, which adjoining room was separated from the operating room by a swinging door containing a window. This is common practice not only in the hospitals in Michigan but in fact throughout the country. It may be added that the Michigan State Nurses Act, 14.690 Michigan Statutes Annotated, Comp.Laws 1948, § 338.360 which describes the activities a registered nurse is authorized to perform, until 1952 permitted execution of treatments and medications "under the supervision and direction" of a licensed physician. This Act was amended by Act 137, Public Acts of 1952, to change the quoted phraseology to "as prescribed" by a licensed physician.

The act or omission relied upon as a predicate for liability under the Federal Tort Claims Act must be tortious under legislative or decisional law of the state wherein the Government's alleged negligence or wrongful act or omission occurred. 28 U.S.C. § 1346(b).

In Michigan, recovery in an action for malpractice may not be had where allegations are not supported by credible medical testimony showing that the treatment or lack of treatment was contrary to customary practice by reputable members of the medical profession practicing under similar conditions or that the lack of skill or care of persons undertaking such professional responsibility was so gross as to be within the comprehension of laymen. A treating physician, surgeon, or nurse-anesthetist is not a warrantor in performing medical or surgical services. They are responsible in damages for unfortunate results when, and only when, it is shown that they have departed from the standard in the community of treatment and care by skilled doctors and nurses. Lince v. Monson, 363 Mich. 135, 136, 140, 108 N.W.2d 845; Skeffington v. Bradley, 366 Mich. 552, 115 N.W.2d 303.

The court finds that there was no negligence on the part of any employee or agent of the United States. Therefore, a judgment of no cause of action will be entered.